1

2                    IN THE UNITED STATES DISTRICT COURT

3              FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5    EVELYN LACHAPELLE,                    Case No.  21-cv-00490-MMC

6                   Plaintiff,

7           v.                            **ORDER GRANTING DEFENDANT'S**
                                          **MOTION TO COMPEL ARBITRATION;**
8    OMNI HOTELS MANAGEMENT               **STAYING CASE**
     CORPORATION,
9                   Defendant.

10

11          Before the Court is defendant Omni Hotels Management Corporation's ("Omni")

12   Motion to Compel Arbitration, filed March 24, 2021.  Plaintiff Evelyn LaChapelle

13   ("LaChapelle") has filed opposition, to which Omni has replied.  Additionally, the parties,

14   with leave of court, have filed supplemental briefing.  The Court, having read and

15   considered the papers filed in support of and in opposition to the motion, rules as

16   follows.[1]

17                                   **BACKGROUND**

18          In her Complaint, LaChapelle, a former employee of Omni, alleges that, at the time

19   she applied for employment, Omni "provided her with a disclosure and authorization form

20   to perform background investigations."  (See Compl. ¶ 22.)[2]  According to LaChapelle,

21   the form "contained extraneous and superfluous language" (see Compl. ¶ 23) and did not

22   inform her she had the right to request from Omni "a complete and accurate disclosure of

23   the nature and scope of the investigation" (see Compl. ¶¶ 51).  Based on said

24   allegations, LaChapelle asserts two claims under the Fair Credit Reporting Act.

25   _____

26          [1] The Court took the matter under submission as of May 7, 2021, the date the
     parties filed their respective supplemental briefs.  (See Order, filed April 26, 2021.)

27          [2] The Complaint is attached as Exhibit A to the Declaration of Scott P. Jang in
28   Support of Defendant's Notice of Removal of Action to Federal Court.

United States District Court
Northern District of California

**DISCUSSION**

By the instant motion, Omni argues LaChapelle's claims are, under the Federal Arbitration Act ("FAA"), subject to arbitration.

The FAA provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

See 9 U.S.C. § 3.  Under the FAA, a district court's role is to determine "if a valid arbitration agreement exists," and, "if so, whether the agreement encompasses the dispute at issue."  See Davis v. Nordstrom, Inc., 755 F.3d 1089, 1092 (9th Cir. 2014).

In support of the instant motion, Omni relies on two documents it asserts comprise a valid arbitration agreement.  The first, titled "Omni Hotels & Resorts Amended and Restated Alternative Dispute Resolution Program for California" (hereinafter, "the Program"), is a five-page document that sets forth the details of the arbitration program. (See Zettler Decl. Ex. A at 2-6.)[3]  The second, titled "Mutual Agreement to Arbitrate Claims on an Individual Basis and Summary of the Amended and Restated Alternative Dispute Program for California" (hereinafter, "the Mutual Agreement") is a two-page document that, when executed, constitutes an agreement between Omni and the individual employee, referred to therein as "Associate," by which the signatories agree to participate in the Program (see id. Ex. A at 7-8), and, in particular, as follows:

> Except as otherwise provided in this Program or as otherwise required by law, the Company and the Associate consent and agree to the resolution by arbitration of all claims or controversies involving or in any way concerning Associate's application with, employment with, or termination from, the Company.

(see id. Ex. A at 7 ¶ 1).

---

[3] In citing to Exhibit A to the Zettler Declaration, the Court has used herein the page number affixed to the top of each page by this district's electronic filing program.

United States District Court
Northern District of California

1    In her opposition, LaChapelle first contends the terms of the Program are not

2    properly incorporated into the Mutual Agreement.

3    Under California law,[4] "parties may incorporate by reference into their contract the

4    terms of some other document."  See Wolschlager v. Fidelity Nat'l Title Ins. Co., 111 Cal.

5    App. 4th 784, 790 (2003) (internal quotation and citation omitted).  "For the terms of

6    another document to be incorporated into the document executed by the parties,"

7    however, "the reference must be clear and unequivocal, the reference must be called to

8    the attention of the other party and he must consent thereto, and the terms of the

9    incorporated document must be known or easily available to the contracting parties."  Id.

10   (internal quotation and citation omitted).

11   Here, in the Mutual Agreement, immediately above LaChapelle's signature, the

12   following language is, as indicated, set forth in capitalized bolded text:

13        **ASSOCIATE ALSO UNDERSTANDS THAT IT IS HIS/HER
     RESPONSIBILITY TO REVIEW THE AMENDED AND RESTATED
14        ALTERNATIVE DISPUTE RESOLUTION PROGRAM WHICH CONTAINS
     ALL OF THE TERMS UNDER WHICH DISPUTES WILL BE RESOLVED
15        UNDER THE PROGRAM.  THE PROGRAM DOCUMENT IS
     INCORPORATED BY REFERENCE INTO THIS AGREEMENT.  A
16        COMPLETE COPY OF THE PROGRAM CAN BE OBTAINED AT THE
     HOTEL'S MANAGEMENT OFFICE OR BY ACCESSING OMNIWEB,
17        WHICH IS THE COMPANY'S INTRANET, THROUGH A HOTEL
     TERMINAL OR PERSONAL COMPUTER.  THE PROGRAM CAN BE
18        FOUND IN THE 'ASSOCIATES SERVICES' SECTION OF THE
     CONNECTION AKA THE HUB.**

19   (See Zettler Decl. Ex. A at 8.)  The Court finds, and LaChapelle does not appear to

20   dispute, the above-quoted language constitutes a clear and unequivocal reference that

21   was called to her attention in the document she signed.  Rather, LaChapelle argues the

22   terms of the Program were neither known nor easily available to her because, at the time

23   she signed the Mutual Agreement, Omni had not provided her with a copy of the Program

24   and she had not yet been given a password for accessing Omni's intranet.  LaChapelle

25

26   _____
     [4] For purposes of the FAA, courts apply state law to determine "the scope of
27   agreements."  See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009).  In this
     instance, both parties, as to the scope of the above-referenced agreement, cite
28   exclusively to California law.

1   was, however, at the hotel at that time (see LaChapelle Decl. ¶ 2-3), and she has

2   submitted no evidence suggesting she could not easily have obtained, as stated in the

3   above-quoted incorporation clause, a copy of the Program from the hotel's management

4   office.

5       Accordingly, the Court finds the terms of the Program are properly incorporated

6   into the Mutual Agreement and, consequently, that the parties' agreement to arbitrate

7   (hereinafter, "Arbitration Agreement") consists of those two documents.  The Court next

8   considers LaChapelle's argument that the Arbitration Agreement is not valid.

9       In that regard, LaChapelle first notes that a contractual provision requiring an

10  employee to waive her right to bring a claim under the Private Attorneys General Act

11  ("PAGA") is "unenforceable," see Iskanian v. CLS Transportation Los Angeles, LLC, 59

12  Cal. 4th 348, 384 (2014),[5] and that a waiver of the right to bring a "representative action"

13  constitutes a bar to bringing a PAGA claim, see id. at 378 (holding provision in arbitration

14  agreement requiring employee to waive right to bring "representative actions" includes

15  prohibition against bringing PAGA claims).  Here, as LaChapelle also notes, the

16  Arbitration Agreement contains such a waiver.  (See Zettler Ex. A at 2 ¶ 2, 7 ¶ 1.)  Next,

17  citing Kec v. Superior Court, 51 Cal. App. 5th 972 (2020), LaChapelle points out that,

18  where an arbitration agreement includes a non-severable provision requiring an

19  employee to waive her right to bring a PAGA claim, the entire agreement is

20  unenforceable.  See id. at 978-81 (finding, where contractual term was unenforceable

21  and not severable, entire agreement was unenforceable).

22      LaChapelle's reliance on Kec is, however, in this instance, misplaced.  In

23  particular, the invalid contractual provision at issue in Kec was found not severable

24  because the agreement in which it was contained expressly stated said provision "may

25  not be modified or severed."  See id. at 974, 976.  Here, by contrast, the Arbitration

26

27      [5] Under the FAA, an arbitration agreement is invalid where it is unenforceable
    under "generally applicable contract defenses" recognized by state law.  See AT&T
28  Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (hereinafter, "Concepcion").

1  Agreement, in a section titled "Severability," expressly states that, "[i]f any provision of

2  th[e] Program or the [Mutual] Agreement is adjudged to be void or otherwise

3  unenforceable, in whole or in part, such adjudication shall not affect the validity of the

4  remainder of the Program or [Mutual] Agreement."  (See Zettler Decl. Ex. A at 6 ¶ 16.4);

5  see also Kec, 51 Cal. App. 4th at 979 (holding "where the consideration is only partly

6  illegal and the agreement is severable, the legal portion may be enforced") (internal

7  quotation, alteration, and citation omitted).[6]

8       Next, LaChapelle argues the Arbitration Agreement is unconscionable.  "Under

9  California law, courts may refuse to enforce any contract found to have been

10  unconscionable at the time it was made, or may limit the application of any

11  unconscionable clause."  Concepcion, 563 U.S. at 340 (internal quotation and citation

12  omitted).

13       "A finding of unconscionability requires a procedural and a substantive element,

14  the former focusing on oppression or surprise due to unequal bargaining power, the latter

15  on overly harsh or one-sided results."  Id. (internal quotation and citation omitted).

16       The first of these two elements, "procedural unconscionability," is present where "a

17  party has no meaningful opportunity to negotiate terms or the contract is presented on a

18  take it or leave it basis."  See Wherry v. Award, Inc., 192 Cal. App. 4th 1242, 1246

19  (2011).  Here, LaChapelle has offered evidence, undisputed by Omni, that she was

20  required to sign "a large stack of on boarding documents," including the Mutual

21  Agreement, as "a condition of [her] employment" (see Lachapelle Decl. ¶ 2),[7] and, in light

22  thereof, the Court finds the "procedural element of an unconscionable contract" is

23  established.  See Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003) (holding

24  "procedural element" established where employer had "imposed on [employee] an

25  

_____

26      [6] The Court also notes that, unlike the plaintiff in Kec, LaChapelle has not asserted
a PAGA claim.

27  

28      [7] In her opposition, LaChapelle clarifies that the reference in her declaration to "on
boarding documents" includes the Mutual Agreement.  (See Pl.'s Opp. at 2:23-28.)

United States District Court
Northern District of California

adhesive arbitration agreement"; observing "few employees are in a position to refuse a job because of an arbitration requirement").

With respect to substantive unconscionability, LaChapelle relies on a provision in the Program that allows Omni to unilaterally modify or revoke the Program as follows:

> This Program can be modified or revoked in writing only by the Company's corporate general counsel or vice president of human resources. Such modification or revocation will only take place with 14 days' notice to the Associates. Further, any modification or revocation will not apply to any claim that has already been filed under this Program or any charge that has been filed with any federal, state or local agency to satisfy the federal and/or state conditions precedent for employment-related claims. The parties specifically agree that the Company will not be considered to have knowledge of any actual, potential, or prospective claim unless such claim has been filed under this Program or a charge has been filed to satisfy the federal and/or state conditions precedent for employment-related claims.

(See Zettler Decl. Ex. A at 5 ¶ 16.3.)[8]

Under California law, "an unqualified right to modify or terminate [a] contract is not enforceable." See Asmus v. Pacific Bell, 23 Cal 4th 1, 16 (2000). The inclusion of a unilateral right to modify or terminate, however, "is not fatal" to enforcement of the agreement where "the exercise of the power is subject to limitations, such as fairness and reasonable notice." See id. For example, an employer's retention of a unilateral right to modify or terminate an arbitration agreement is enforceable where the agreement provides such right is solely applicable to "future claims." See Harris v. TAP Worldwide, LLC, 248 Cal. App. 4th 373, 386 (2016). Additionally, "[a] unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant [of good faith and fair dealing] so that changes do not apply to such claims," and, consequently, only apply to future claims. See Peleg v. Neiman Marcus Group, Inc., 204 Cal. App. 4th 1425, 1465 (2012).

---

[8] LaChapelle's sole argument as to substantive unconscionability is based on the above-quoted provision. She does not argue the Program's inclusion of a provision requiring her to waive PAGA claims is substantively unconscionable, and, indeed, the Ninth Circuit has held such provisions, although "unenforceable," are not "unconscionable." See Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1264 (9th Cir. 2017).

United States District Court
Northern District of California

1    Here, the unilateral right to modify or revoke is not limited to future claims.  Rather,

2  as set forth in the Program, Omni's right to make unilateral changes is only inapplicable

3  with respect to two specified types of accrued or known claims (see Zettler Decl. Ex. A at

4  5 ¶ 16.3), and the implied covenant of good faith and fair dealing cannot be used to

5  "create implied terms that contradict [such] express language," see Peleg, 204 Cal. App.

6  4th at 1465; see also, e.g., Lyons v. NBCUniversal Media, LLC, 2019 WL 6703396, at

7  *10-11 (C.D. Cal. September 27, 2019) (holding, where agreement expressly provided

8  employer's unilateral changes were inapplicable to "previously filed claims" but did not

9  restrict the employer's right to apply unilateral changes to other types of accrued or

10  known claims, implied covenant of good faith and fair dealing could not "save the

11  provision").  Consequently, the Court finds the unilateral modification/revocation provision

12  is substantively unconscionable.

13    The Court next addresses the parties' dispute as to whether that unenforceable

14  provision is severable, and, as set forth below, finds it appropriate to sever it rather than

15  find the Arbitration Agreement as a whole unenforceable.  See Concepcion, 563 U.S. at

16  339 (2011) (holding, "[u]nder California law," courts "may limit the application of any

17  unconscionable clause") (internal quotation and citation omitted); Cal. Civ. Code § 1670.5

18  (providing where court finds "contract or any clause of the contract to have been

19  unconscionable at the time it was made[,] the court may refuse to enforce the contract, or

20  it may enforce the remainder of the contract without the unconscionable clause").

21    Severance of an unconscionable clause is not appropriate where a court "would

22  have to, in effect, reform the contract" in order to preserve the rest of the agreement.

23  See Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 125

24  (2000); see also, e.g., Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d

25  996, 1006 (9th Cir. 2010) (applying California law; finding arbitration agreement

26  unenforceable as whole, where severance of "offending provisions would have left almost

27  nothing" and remainder could not function as viable agreement without rewriting

28  remaining provisions); Santa Clara Valley Mill & Lumber Co. v. Hayes, 76 Cal. 387, 393

United States District Court
Northern District of California

1   (1888) (holding, where agreement between lumber mill and lumber manufacturer

2   contained manufacturer's promise to sell lumber to mill, but "sole object" of agreement

3   was to illegally fix prices of lumber, court could not rewrite contract so as to enforce

4   promise to sell to mill).  In this instance, however, no reformation or rewriting is

5   necessary, as severance of the clause allowing Omni to unilaterally modify or terminate

6   the Program will simply serve to maintain an otherwise valid agreement.  See

7   Armendariz, 24 Cal. 4th at 124 (noting "doctrine of severance attempts to conserve a

8   contractual relationship if to do so would not be condoning an illegal scheme").  In

9   particular, the parties to the instant action will remain in the same position as at the time

10  they entered into the Arbitration Agreement; in other words, the terms of the Program as

11  presently written will apply.

12           Accordingly, the Court finds the Arbitration Agreement is enforceable.

**CONCLUSION**

14           For the reasons stated above, Omni's motion to compel arbitration is hereby

15  GRANTED, and the above-titled action is STAYED pending arbitration.

16           **IT IS SO ORDERED.**

18  Dated: August 3, 2021

MAXINE M. CHESNEY
United States District Judge